FILED
2010 Nov-17 PM 02:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **PATRICIA A. WATTS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 6:09-CV-1692-RDP |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **COMMISSIONER OF SOCIAL** } | |
| **SECURITY,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Patricia A. Watts brings this action pursuant to Section 1631(c)(3) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). *See* 42 U.S.C. § 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

### I. Proceedings Below

Plaintiff filed her application for SSI benefits on January 16, 2002, alleging a disability onset date of January 1, 1999.[1] (Tr. 90-93). Plaintiff's claim was denied on July 11, 2002. (Tr. 68). She requested a hearing before an Administrative Law Judge ("ALJ") on August 21, 2002, and her case was heard by ALJ Jerry C. Shirley on March 22, 2004. (Tr. 73, 75-77, 789-816). In his June 7, 2004 decision, ALJ Shirley determined that Plaintiff was not eligible for SSI because she had transferable

---

[1]Plaintiff's initial onset date of disability was later amended to January 16, 2002. (Tr. 792).

skills from semi-skilled work previously performed to unskilled, light work activity. (20 C.F.R. ¶ 416.968). The ALJ determined that Plaintiff's exertional limitations would not allow her to perform the full range of light work; however, using Medical-Vocational Rule 202.18 as a framework for decision-making, he found there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 52-63). Plaintiff appealed ALJ Shirley's decision to the Appeals Council on June 28, 2004. (Tr. 47-48).

While Plaintiff's appeal was pending before the Appeals Council, she filed a new claim for SSI on June 10, 2004. (Tr. 147-50). On September 22, 2004, a state agency made a determination on Plaintiff's new application that she was disabled as of June 1, 2004. (Tr. 33-35). Because ALJ Shirley's decision covered the period June 1 to June 7, 2004, the state agency's determination that Plaintiff was disabled as of June 1, 2004 created an overlap between that determination and the ALJ's decision, in effect (and impermissibly) reopening the ALJ's decision. (Tr. 17, 80-83; *see also* 20 C.F.R. 416.1455(c)). On March 30, 2006, the Appeals Council remanded both claims in order to resolve any inconsistencies. (Tr. 80-83).

A hearing was held on August 22, 2006 before ALJ Dan Grady at which Plaintiff appeared and testified. (Tr. 817-35). In his November 21, 2006 decision, ALJ Grady determined that Plaintiff was not disabled prior to June 1, 2004, but became disabled on that date and has continued to be disabled through the date of his decision. He further found Plaintiff's substance use disorder was not a contributing factor material to the determination of disability since June 1, 2004. (Tr. 27). Plaintiff requested a review of ALJ Grady's decision on December 12, 2006. (Tr. 11-13). The Appeals Council denied the request on June 25, 2009 (Tr. 7-10), thereby making the Commissioner's final decision subject to review under 42 U.S.C. § 1383(c).

## II. ALJ Decision

Determination of disability under the Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines the claimant's residual functional capacity ("RFC") which is the most work that the claimant can still do despite her impairment. Using the RFC, the Commissioner decides if the claimant can meet the physical and mental demands of past work. If the claimant cannot, then the Commissioner will proceed to the fifth and final step. In this step, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this determination, the Commissioner will use the Medical-Vocational Guidelines ("MVGs") in Appendix 2 of Part 404 of the Regulations. The MVGs will direct findings of "disabled" or "not disabled" when all of the claimant's vocational factors and RFC match a category listed in the Appendix. When the claimant's vocational factors and RFC do not match a listed category (the claimant is unable to perform the full range of work for her RFC), the ALJ will consider the testimony of a vocational expert ("VE"). If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982)

(other citations omitted).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 25, 2002.  (Tr. 19).  Based upon the medical evidence presented, the ALJ concluded that Plaintiff has the following impairments:  diabetes millitus, hypertension, gastritis, residuals of carpal tunnel syndrome release on the right, hyperlipidemia, hypothyroidism, coronary artery disease, obstructive sleep apnea, depression/anxiety, no more than low average intellectual functioning, obesity, chest pain, osteoarthritis of the spine/hip/knee, and nicotine abuse.  (Tr. 19).  The ALJ then found that these impairments taken individually or in combination do not meet or equal an impairment listed in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4.  (Tr. 21).

Accordingly, the ALJ determined that prior to June 1, 2004 (the period relevant for this appeal), Plaintiff had the RFC to perform light exertional activity with moderate or less pain, needing a sit/stand option; could not use foot controls but could perform bench-type work; had no significant postural limitations; could occasionally lift 20 pounds or less; and had no more than moderate impairment of her ability to perform the basic mental functions of unskilled work.  (Tr. 21-25). Because Plaintiff had no relevant past work history, the ALJ was required to proceed to the fifth step of his analysis. (Tr. 25).  During the 2004 hearing, ALJ Shirley posed a hypothetical question to the VE which took into account the aforementioned limitations.  (Tr. 812-13).  The VE testified that there were jobs in sufficient numbers in the national economy for a person of Plaintiff's age, education, work experience, and [RFC] for the period prior to June 1, 2004.  (Tr. 26, 813).  Based

on his RFC determination and the testimony of the VE from the 2004 hearing, ALJ Grady determined that Plaintiff was not disabled prior to June 1, 2004. (Tr. 26).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed or, in the alternative, remanded for further consideration. (Pl.'s Mem. 9). Plaintiff asserts two main arguments. First, Plaintiff claims that the ALJ's RFC determination for the period prior to June 1, 2004 is not supported by substantial evidence. (Pl.'s Mem. 6-7). Specifically, Plaintiff asserts that the ALJ had no basis for concluding that she was able to perform light work prior to June 1, 2004 if he also determined that she was limited to sedentary work after that date. (Pl.'s Mem. 7-8). Plaintiff claims that (1) because the medical evidence for the period January 16, 2002 to June 1, 2004 is not significantly different from the evidence after June 1, 2004, the ALJ should have found her limited to sedentary work as of January 16, 2002; and (2) if the ALJ had found her limited to sedentary work as of January 16, 2002, then he would have been directed by MVGs 201.09 to find her disabled. (*Id.*). Second, Plaintiff argues that the ALJ's findings fail to meet the specificity requirements of 20 C.F.R. § 404.1545 because he failed to specify the frequency with which she must alternate between sitting and standing. (Pl.'s Mem. 8-9).

### IV. Standard of Review

The only issues before this court are whether there is substantial evidence in the record to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial

evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

## V.  Discussion

**A.    ALJ Grady's RFC Determination of Light Work for the Period Prior to June 1, 2004 is Supported by Substantial Evidence.**

Plaintiff is correct when she asserts that had the ALJ determined she possessed an RFC to perform only sedentary (rather than light) work prior to June 1, 2004, he would have been directed by MVGs 201.09 to find her disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2008). However, the ALJ's determination that Plaintiff was able to perform a limited range of light work prior to June 1, 2004 is supported by substantial evidence, and therefore, is due to be affirmed.

"An RFC is not the *least* an individual can do despite his or her [functional] limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. A claimant's limitations must result from a "medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id.* "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-7p, 1996 WL 374186, at *1.

The MVGs divide a claimant's RFC into the following categories: sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. § 404.1567. By statute, "light" work is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

"Sedentary" work on the other hand is defined as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The term "frequently" is defined as "occurring from one-third to two-thirds of the time," *Casher v. Halter*, 2001 WL 394921, at *9 (S.D. Ala. March 29, 2001) (citing SSR 83-10, 1983 WL 31251, at *5), whereas "occasionally" is defined as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5.

While the MVGs clearly contemplate describing a claimant's RFC in terms of categories of work such as light or sedentary, a claimant is not excluded from a category merely because she cannot perform the full range of work in that category. *See, e.g.*, *Phillips v. Barnhart*, 357 F.3d 1232, 1241-42 (11th Cir. 2004); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) ("When the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate."). When a claimant cannot perform the full range of work in a given category, the ALJ must consider the testimony of a VE. *See Phillips*, 357 F.3d at 1242. In such situations, the MVGs act as a framework for making a determination rather than directing a particular finding. *See id.* In fact, SSR 83-10 recognizes that a job can fall within the light work category even if it requires sitting most of the time. *See Casher*, 2001 WL 394921, at *9 ("A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work").

In this case, the ALJ determined that Plaintiff was capable of a limited range of light work (Tr. 21). He concluded that Plaintiff would have the following functional limitations: (1) she would need a sit/stand option; (2) she could not use foot controls but could perform bench-type work; (3) she had no significant postural limitations; (4) she could occasionally lift up to 20 pounds or less; and (5) she had no more than moderate impairment of her ability to perform the basic mental functions of unskilled work. (Tr. 21). Based on the statutory definitions, these limitations would permit Plaintiff to perform a limited range of light work. *See* 20 C.F.R. § 404.1567. For the following reasons, this court finds that the ALJ applied proper legal standards and that his determinations regarding Plaintiff's limitations are supported by substantial evidence.

Plaintiff contends that she was capable of no more than sedentary work prior to June 1, 2004. Thus, she implicitly asserts that she was limited to sitting with only a limited amount of walking. While light work requires more frequent standing or walking, *see Manuel v. Astrue*, 2008 WL 795326, at *6 n.3 (M.D. Fla. Mar. 24, 2008), the ALJ recognized that Plaintiff would need a sit/stand option and the VE accounted for this limitation in his testimony.  (Tr. 21, 813) ("[T]here would be light work [such as] bench or conveyor work consistent with that [hypothetical question] including such things as line packers. Those with a sit/stand option in the region of north-central Alabama we're looking at about 270.").  Therefore, Plaintiff's argument that the ALJ erred because she is unable to stand for long periods of time is of no help to her here.  (Pl.'s Mem. 7-8).

As for Plaintiff's problems related to depression/anxiety prior to June 1, 2004, the ALJ determined that Plaintiff had only "moderate limitations of work-related mental functions." (Tr. 24). This determination is supported by substantial record evidence. The ALJ placed great weight on the opinion of the state agency medical consultant from May 2002 which described Plaintiff's mental limitations as moderate.  (Tr. 383-403).  This state agency determination is consistent with the contemporary examination conducted by Dr. J. R. Haney also in May 2002 wherein he found Plaintiff was suffering from "Major Depression, single episode, moderately severe." (Tr. 242-43). Dr. Haney stated that Plaintiff "appeared capable of understanding, carrying out and remembering work related instructions.  She appeared capable of responding appropriately to supervision, co-workers and the public unless her condition deteriorates." (Tr. 243).  The only limitation identified by Dr. Haney was that Plaintiff "would experience more difficulty maintaining customary work attendance, persistence and pace due to her depression and anxiety." (*Id.*).  However, the ALJ determined that this statement "does not support a finding of more than moderate mental limitations

9

for more than very sporadic and short periods at any time." (Tr. 25). Based on the testimony of the VE, a finding of mild to moderate mental limitation would not impose any functional restrictions on Plaintiff. (Tr. 814-15).

The ALJ placed little emphasis on the state agency's medical consultant's opinion from September 2004 that Plaintiff had marked impairment of her ability to: maintain attention and concentration for extended periods; perform activities within a schedule; complete a normal workweek; interact appropriately with the general public; and respond appropriately to supervisors and co-workers. (Tr. 25, 784-87). The ALJ noted that the September 2004 opinion was inconsistent with the Psychiatric Review Technique form also administered in September 2004 (Tr. 770-83), as well as the August 2004 report of Dr. Jack L. Bentley, the only contemporaneous examining physician. (Tr. 766-69). Plaintiff's contention that she was capable of performing sedentary work prior to June 1, 2004 would also belie any claim that her depression/anxiety prevented her from similarly performing light work during that time. (*See* Tr. 815) ("If [the ALJ] finds that [Plaintiff's mental impairments are] mild or moderate then that's not going to impact the work as noted but if [they are] moderately severe or severe then it would prevent any work.").

With regard to the other physical limitations identified by the ALJ, namely Plaintiff's inability to use foot controls, lack of significant postural limitations, and ability to lift only 20 pounds on occasion, Plaintiff must show that the record does not support her ability to perform these activities. *See* 20 C.F.R. § 404.1545 (2003) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); SSR 96-8p, 1996 WL 374184, at *1. To the contrary, the record does not show that prior to June 1, 2004, Plaintiff was unable to perform these functional activities. Concerning Plaintiff's osteoarthritis, the ALJ recognized that condition would preclude

Plaintiff from working at the light or heavier levels. (Tr. 24). However, the ALJ determined there was no medical evidence to support the diagnosis of osteoarthritis prior to August 2004. For that reason, the ALJ accepted June 1, 2004—the date the state agency determined Plaintiff was disabled because of her depression—as the day she was restricted to sedentary work. (*Id.*). Thus, the ALJ did not consider Plaintiff's osteoarthritis in determining her RFC prior to June 1, 2004. (*Id.*). Plaintiff has not challenged the ALJ's exclusion of her osteoarthritis from his RFC determination for this period. (*See* Pl.'s Mem. 6-10).

Plaintiff identifies morbid obesity as a basis for finding her unable to perform light work. (Pl.'s Memo 7-8). However, there is no medical evidence showing that her obesity restricted her ability to perform the functional activities identified by the ALJ. (See Tr. 260-67; 289-95; 324; 332; 353-59; 408; 433-34; 443; 444; 450-52; 454; 459; 468; 481-84; 488-89). Thus, the ALJ did not err in making his RFC finding notwithstanding Plaintiff's obesity. *See Wind v. Barnhart*, 133 Fed. Appx. 684, 690-91 (11th Cir. 2005).

Plaintiff contends that the ALJ improperly dismissed her other "major medical conditions as even threshold 'severe' impairments." (Pl.'s Mem. 8). The RFC determination, however, is not concerned with the severity of a claimant's impairments but the limitations those impairments place on their ability to do work. SSR 96-8p, 1996 WL 374184, at *1. Moreover, because the RFC determination occurs at Step Four, the burden of proving disability remains squarely on the claimant. *See Freeman*, 681 F.2d at 729. The ALJ considered all of Plaintiff's medical conditions both "severe" and "not severe" in making his RFC determination (Tr. 19), and he concluded that they did "not impart any functional restrictions" on Plaintiff. (Tr. 19, 24). Moreover, Plaintiff has not

11

identified any functional limitations other than those identified by the ALJ which would have lead to a different RFC finding. (Pl.'s Mem. 7-8).

The ALJ considered the following medical conditions of Plaintiff and concluded they were not themselves (individually or in combination with other conditions) severe and did not impart any significant functional limitations: (1) coronary artery disease; (2) diabetes mellitus; (3) hypertension; (4) gastritis; (5) carpal tunnel syndrome; (6) hyperlipidemia; (7) hypothyrodism; (8) obstructive sleep apnea; and (9) chest pain. (Tr. 19, 24). After examining Plaintiff's medical records, the ALJ determined that although Plaintiff underwent angioplasty/stenting in July 2002, the medical evidence showed this problem did not remain severe long enough to cause any significant functional limitations on Plaintiff.[2] (Tr. 20, 244-45, 254, 267, 283, 293-94, 297, 352, 357-59, 379, 408, 433-34, 444, 450-52, 454, 468-69, 483, 488-90, 546-47). Aside from some references to "occasional blurred vision" (Tr. 20), the ALJ determined Plaintiff's diabetes did not restrict her ability to work. (Tr. 20, 179-80, 249-50, 260-62, 332-33, 404-06, 433-34, 450-52, 472-75, 559-60). The ALJ found Plaintiff was able to control her hypertension with medication. (Tr. 20, 332, 405, 408-09, 450-52, 489, 536, 559-60). Plaintiff's gastritis was never a serious concern of her treating physicians. (Tr. 20, 332-33, 433-34, 450-52, 461, 488-90). Plaintiff quickly recovered following her carpal tunnel release surgery in January 2002, and she presented no evidence that a previous shoulder problem persisted past 2001. (Tr. 217, 223-24, 232-39). Plaintiff's hyperlipidemia, in and of itself, could only possibly lead to the worsening of her coronary artery disease and, in any event, was controlled by diet and

---

[2] The Appeals Council subsequently determined that the ALJ erred in determining that Plaintiff's coronary artery disease was not "severe." (Tr. 8). However, the Appeals Council went on to conclude that even if the ALJ had properly characterized this disease, it would not have resulted in a different RFC. (*Id.*).

medication. (Tr. 20, 247, 289, 333, 347, 353, 429, 451, 459, 461-62, 473). Plaintiff's obstructive sleep apnea was not confirmed until 2005 and would likely have been controlled with CPAP treatment. (Tr. 20, 347, 550, 601-10). Her hyperthyroidism was not positively diagnosed until August 2005 (Tr. 764), and Plaintiff presented no evidence that it resulted in any functional limitations. (Tr. 574-79). Finally, though Plaintiff visited the hospital on several occasions for chest pain, her doctors were unable to uncover any abnormality during those visits. (Tr. 21, 244-45, 267, 283, 293-94, 297, 379, 408, 444, 454, 468-69, 483, 546-47, 569). Thus, the ALJ's determinations concerning Plaintiff's functional limitations are supported by substantial evidence.

Plaintiff's testimony alone does not suffice to find a different RFC. *See* SSR 96-7p, 1996 WL 374186, at *1. Plaintiff testified that while she does not do her own grocery shopping, she does go to the grocery store with her daughter-in-law on occasion and that she is able to walk around the store (though it makes her weak). (Tr. 806). Plaintiff stated that she was not able to vacuum or sweep, but that she was able to wash dishes. (Tr.812). Plaintiff also claimed that she was able to take care of her day-to-day activities such as "personal needs and bath[ing] and comb[ing her] hair." (Tr. 801). Finally, Plaintiff testified that she was able to read and write though she claimed she sometimes had difficulty with these activities. (Tr. 811). The ALJ stated that in order to find Plaintiff unable to perform light work, he would have to fully credit her testimony. (Tr. 24). The ALJ declined to do so because he characterized Plaintiff's smoking habit as substance abuse. (Tr. 24). The Appeals Council acknowledged that smoking is not substance abuse under the Act and is, therefore, not material. (Tr. 8). Still, the Appeals Council found that even if Plaintiff's testimony could be characterized in that way, that would not have resulted in a different RFC for Plaintiff. (*Id.*). Plaintiff does not argued before this court that the ALJ's improperly discredited her testimony

(Pl.'s Memo 7-8), and therefore, this court will not consider this issue. *See Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004). Moreover, it is not at all certain that even had the ALJ fully credited Plaintiff's testimony, he would have found her limited to sedentary work. His decision merely notes that he could not find Plaintiff disabled without fully crediting her testimony. (Tr. 24). Given the complete absence of medical evidence in the record prior to June 1, 2004 supporting functional restrictions different from those found by the ALJ, it seems unlikely that the ALJ would have found a different RFC. The Appeals Council reached just such a conclusion. (Tr. 8).

Finally, Plaintiff argues that the ALJ had no logical reason for finding a different RFC prior to June 1, 2004 than he found after that date. However, the ALJ specifically identified the absence of medical evidence supporting Plaintiff's diagnosis of osteoarthritis before August 2004 as his reason for excluding that impairment from his RFC determination for the period prior to June 1, 2004. (Tr. 24). Moreover, Plaintiff's diagnosis of osteoarthritis was the reason the ALJ determined an RFC of sedentary work for the period after June 1, 2004. (Tr. 24). Thus, the ALJ's determinations of different RFCs for the periods before and after June 1, 2004 are reasonable and supported by substantial evidence.

Because the RFC determination is within the authority of the ALJ, *see Beech v. Apfel*, 100 F.Supp.2d 1323, 1331 (S.D.Ala. 2000) ("The determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments."), this court must respect the ALJ's decision when it is supported by substantial evidence. Plaintiff has not identified any evidence

14

showing that she had greater functional restrictions during the relevant time period than those identified by the ALJ. Instead, Plaintiff argues that the ALJ improperly characterized her RFC as light rather than sedentary. This argument amounts to nothing more than an invitation for this court to substitute its judgment for that of the Commissioner. That is an invitation the court must decline. *See Chester*, 792 F.2d at 131. Because the functional limitations identified by the ALJ are supported by substantial evidence and are consistent with an RFC of light work, the ALJ's determination of an RFC of light work for Plaintiff for the period prior to June 1, 2004 is due to be affirmed.

**B.**  **ALJ Grady Did Not Err by Failing to Specify the Frequency with Which Plaintiff Would Need to Alternate Between Sitting and Standing in the Hypothetical Question Posed to the VE.**

In performing an RFC analysis, an ALJ must "identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at * 1. When engaging in the function-by-function analysis there is always a concern that an ALJ may "overlook[] some of the individual's limitations or restrictions." *Id.* at *4. An ALJ should address the "seven exertional capacities: sitting, standing, walking, lifting, carrying, pushing, and pulling" even if they are considered in combination. *Id.* at *5. However, an ALJ's failure to make specific findings regarding these capacities does not constitute grounds for reversal when the claimant's limitations are reasonably apparent in the ALJ's hypothetical question to the VE. *See Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007) ("While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability Freeman claimed"); *Willaims v. Barnhart*, 140 Fed. Appx. 932, 936-37 (11th Cir. 2005); *Cumbess v. Asrue*, 2009 WL 3064526, at *1 (M.D.Ga. Sept. 22, 2009).

In *Williams v. Barnhart*, the claimant challenged an ALJ's hypothetical question to a VE as inaccurate and incomplete because the ALJ "did not include . . . the frequency that [the claimant] needs to alternate [between] sitting and standing." 140 Fed. Appx. at 936. In *Williams*, the ALJ specifically stated that the claimant's job would need "what's typically called a sit/stand option." *Id.* at 937. The Eleventh Circuit determined that "the reasonable implication of the ALJ's description was that the sit/stand option would be at [the claimant's] volition" and that "[t]his implication satisfie[d the claimant's] needs." *Id.*

Plaintiff contends that the ALJ failed to make specific determinations regarding the "seven exertional capacities," and therefore, his decision was in error. (Pl.'s Mem. 8-9). Specifically, Plaintiff claims that the ALJ failed to state the frequency with which she would need to alternate between sitting and standing. (Pl.'s Mem. 9). Though the ALJ did not make specific findings as to how long Plaintiff would be able to sit or stand, he did determine that she would need a sit/stand option. (Tr. 21). During the 2004 hearing, ALJ Shirley also recognized this limitation and asked the VE to account for it. (Tr. 813). Moreover, ALJ Grady relied on this testimony in making his determination. (Tr. 26). Therefore, there was no need for ALJ Grady to make specific findings as to the frequency with which Plaintiff would need to alternate between sitting and standing. As the Eleventh Circuit found in *Williams*, the reasonable implication of the "sit/stand option" language in the hypothetical question posed to the VE is that Plaintiff would need the option to sit or stand at her own volition.

In fact, the VE accounted for this limitation in his answer to the hypothetical stating that Plaintiff could perform bench type work, although specifically restricting the number of jobs

16

available to those with a "sit/stand option" such as "line packer, bagger, and table hand." (Tr. 26, 813). Furthermore, Plaintiff has presented no evidence that she could not perform the work identified by the VE. (Pl.'s Mem. 8-9). Because the ALJ considered Plaintiff's need for a "sit/stand option," he was not required to make specific findings as to the duration that Plaintiff could sit or stand. Thus, Plaintiff is not entitled to remand here.

### VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled prior to June 1, 2004 is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this  17th  day of November, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE